May it please the court, Attorney Dana Duncan representing Melissa Varga. This is her second federal appeal. The first time was remanded by the district court. This case comes before the court on a second hearing. In this case, Ms. Varga had multiple medical issues involving endometriosis, obesity, pain disorder, depression, migraine headaches, irritable bowel syndrome, and fibromyalgia. She was subject to multiple medical procedures. She was treated and ultimately diagnosed with depression. She was awarded disability benefits from the Veterans Administration as a result of a compensation and pension examination specifically on the issue of mental illness. In this particular case, the question comes before the court on the effectiveness of the administrative law judge's hypothetical questions that deals with mental issues. This case originally was decided by the district court before this court's decision was rendered in Yurt. I think that Yurt ultimately is a controlling issue in this particular case. These cases are by far the most difficult, perplexing, and nebulous area of Social Security law. In this particular case, we have judges who quite frankly will issue the same blanket RFC on every mental health claim. And it's an issue that ultimately will be raised in district court as affidavits are going to be presented outlining how this is being done by judges. This case ultimately comes down to the fact that at the first hypothetical question, the judge indicated no fast-paced production requirements. Then he followed that up by adding to that only simple work related with a few decisions, if any, with workplace changes, no more than occasional interaction with workers, coworkers, and supervisors. Now the regulations lay out, there are four areas for mental health that's supposed to be considered. Understanding and memory, social functioning, adaption, and work pace, and concentration. What tends to happen is these lines can get blurred, but what's really happening is that most of the time the judges are blurring these specifically, and then throwing in on top of it this nebulous term called unskilled work. And that's what ultimately simple repetitive work has been translated to mean. Now unskilled work is nebulous because if you're using it within the context of the dictionary of occupational titles, which is the standard by which Social Security operates, unskilled has to do with the specific vocational preparation. And that means that an unskilled job can be learned by demonstration of 30 days or less. Now I'd like to know exactly how in the world a demonstration by 30 days or less has anything to do with whether someone with a mental illness is competent to perform a job. It's never been explained, nor has it really been interpreted or presented in any logical form. In this particular case, the judge did use this term, which, and I'll point out, the coworkers and supervisors. Could you repeat that? Could you repeat what you just said? Because... If you're using unskilled work, the dictionary of occupational titles interprets unskilled work as having an SVP of one or two. If you look at the appendix C of the DOT, it defines unskilled work, SVP one or two, of having to be demonstrated by up to 30 days. Now, and my point was, I don't know how a demonstration of 30 days has anything to do ultimately with the determination of whether someone with a mental illness can perform work. So we are confusing these terms by this simple, repetitive thing and unskilled work to a point where this is all just so nebulous that what ends up happening is whatever the desired outcome of the case is, is what happens. Instead of applying the facts in law and coming up with the conclusion, we're too often coming up with the conclusion, then using judicial twister to come up with the facts that ultimately create this tangled mess of facts that will support the ultimate conclusion. Well, here, of course, the ALJ rejected the notion that Ms. Varga suffers from significant limits on CPP. Sure, but as the case in Europe pointed out, the judge also, in his decision on appendix page 17, gave or concurred with the state agency's opinions. And the state agency, under concentration, persistence, and pace, specifically found that she has limitations or moderate limitations in maintaining attention concentration for extended periods and completing a normal work day and work week without interruptions from psychologically based symptoms and performing at a consistent pace. So here we're talking about somebody that can't focus and can't perform at a consistent pace because of a mental illness. In this case, really ruminating about her pain problems and how it is affecting her ultimate life. So the judge is in one sentence saying, I support this finding, and then turning around and then saying, I'm going to ignore that part of it and say, I'm only going to say that as far as CPP, she's limited to no fast-paced production without providing any information whatsoever as to how he arrived at no fast-paced production. So are you arguing that the ALJ absolutely did not weigh the evidence with respect to CPP? Well, I think it's inconsistence in his findings in that he's in one sentence saying that he agrees with the state agency and then takes the state agency's findings on the mental RFC form and then ignores them and then makes a finding that has no support by the state agency's ultimate documents and which he never explains how he arrived at. Quite frankly, to do these types of cases, and I understand the court's concern about the workload for ALJs, but we're not talking about rocket science. We're talking about being able to explain your position and to apply the facts. We're able to find ways of applying the facts and circumstances to cases to deny them, but yet I don't find that we're making the same effort to support them. I must tell you that sometimes when I read these cases, I do think it's rocket science because it's so arcane and so detailed and so difficult to figure it all out. It's a form of rocket science. Maybe it's just because I've been doing this for 25 years and I do about 300 hearings a year in addition to about 150 briefs that it's easy, but by the same token, ALJs and the decision writers have the same advantage. So my initial time has expired. Unless there's any questions, I'll defer and allow for any rebuttal. Thank you. Mr. Truitt. Hello. Another rocket scientist. May it please the court, I'm Eric Truitt on behalf of the commissioner. When the district court remanded this case the first time around, it was because the ALJ did not evaluate key pieces of evidence. But when the case came to the ALJ the second time, Varga essentially conceded that the ALJ had properly weighed the evidence concerning her physical impairments. Varga didn't contest the ALJ's credibility assessment. Yeah, but Varga says the ALJ failed to link his specific findings to the question posed to the vocational expert. Yes, and that leads to my next point is that the ALJ in this case actually, it's an unusual case in that the ALJ was relying primarily on the opinion of a treating source instead of the opinion of the state agency psychological consultant. Yeah, but the problem is when you look at the three key cases, York, really four cases, Barnhart, Stewart, O'Connor, out of our circuit, the way the ALJ phrased the question was not what it should have been. We have rejected hypothetical question formulations almost exactly like the one used by the ALJ. Well, Your Honor, to determine whether the hypothetical question is correct, you first have to determine what the claimant's limitations are. So the first step is to arrive at the RFC, the most the claimant can do. Then when you look at the hypothetical question, you say, does that hypothetical question accurately communicate what the ALJ found? So the first step is the ALJ has to determine the most the claimant can do despite her impairments. And then second, the ALJ has to accurately communicate that information to the vocational expert. And that idea is you'll see often in your cases the idea that the ALJ has to include all the limitations found credible in the hypothetical question. In essence, that phrase recognizes that the ALJ first makes the RFC determination and then subsequently communicates that RFC. Now, in the cases you're referring to, for example, in O'Connor-Spinner, the RFC determination in that case said that the claimant had deficits in concentration, persistence, and pace. That was in the RFC finding explicitly. And then the ALJ did not communicate that limitation, that part of the RFC finding, to the vocational expert. In this case, in contrast, the ALJ was relying on the claimant's treating sources and found that she had some problems with concentration as a result of her pain and as a result of her medication, but they were not so severe as to prevent her from doing simple, routine, repetitive tasks that did not involve a great deal of concentration. But see, there are magic words in this concentration, persistence, or pace. Those have become magic words. They were not part of the hypothetical question. It's this fast-paced production requirement. But again, Your Honor, the ALJ did not make the same RFC finding in this case as the ALJ did in, for example, O'Connor-Spinner. The ALJ isn't saying that she has problems in all three of these areas. The ALJ says she has limited problems with concentration as a result of side effects of medication, so I'm not going to have her do anything that involves a significant amount of mental function. I'm not going to have her be exposed to hazards where if you had a temporary lapse in concentration, it could be quite dangerous. So again, the first thing you have to look at is what did the ALJ find credible, i.e., what did the ALJ say her RFC is? Then you look at whether or not the ALJ communicated that RFC to the vocational expert. You know, for instance, one of the jobs in the economy that the ALJ thought she could do was cashier. Well, boy, oh, boy, if you don't have concentration, you wouldn't keep that job very long. Well, Your Honor, that was an alternative finding. The primary finding was that she could perform her past work as an office assistant as actually performed. The ALJ and the vocational expert heard testimony at the hearing that basically the job consisted of her getting a list of things to file and type per day and that she would go about and do her job without much interaction with others. So that's the primary job that the ALJ relied on. Even if you rule out the cashier job, there's also the job of laundry worker, which wouldn't necessarily involve the same amount of concentration as a cashier job would. So the primary job was based on how her office assistant position was performed as she testified at the hearing. I'd like to turn to something that Mr. Duncan said, and he said that in checking the boxes on the MRFCA form, the state agency psychological consultant said that Varga couldn't focus or perform at a consistent pace. Right. That's not what those boxes mean. If you look at the instructions for the form, the instructions for the form state that you check not significantly limited when the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity. Then you check moderately limited when there's any impairment whatsoever in that activity. And that's the holding of the Third Circuit case Smith that we cite in our brief. In essence, those check boxes, those check boxes aren't a finding that the level of difficulty in that area is somehow below competitive standards or would preclude the person from generally performing the activity. It's basically a worksheet for the person who's filling out the form to say, yes, this person, there's some evidence of some problem in this area. I need to consider this more when I provide the narrative statement of RFC in Part 3 of the form. So if you look at the Smith case, and if you look at the provisions in our POMS that are cited within the Smith case, you'll see that the boxes on that Section 1 form don't mean what she's claiming that the boxes mean. So that's my first point there. The second point there is that the ALJ, this case is unlike Yert, because in Yert, if you recall, Judge Roedner, you had basically all of the evidence on one side, and then you had the ALJ and a state agency psychologist on the other side. And he was a man with psychosis who had held up a knife to a co-worker, and it seemed unlikely. More than once. It seemed very unlikely to the court that he would be able to return to his past work. Certainly not to that job. Here, the ALJ was not relying on an unfounded state agency opinion. Instead, the ALJ is relying on the opinion of the claimant's treating psychiatrist and psychologist. The ALJ is relying on the treatment notes of the claimant's therapist or psychologist at the VA. So it's a much different situation than Yert, because you don't have an ALJ that's purporting to adopt or rely entirely on an opinion that's unfounded. Instead, he's never disputed that the ALJ could reasonably credit the opinion of some of his treating psychologists and psychiatrists versus the opinion of his others. So I think on its facts, Yert does not really apply here. Now, as to the law, I noted the Smith case, the published Third Circuit case. If Yert means what Mr. Duncan says Yert means, then the court had created a circuit split without acknowledging it or discussing Smith. I find that an unlikely occurrence. It's much more reasonable to see that the court was simply commenting on the lack of evidence that supported the ALJ's decision. Thank you. Mr. Duncan? Well, two more minutes. I'll be quick, Your Honor. Two points. One is the government is correct in pointing out that this was a Step 4 decision with a Step 5 alternative. But even under Step 4, and I cited in my brief the case law relevant, when you have a vocational expert testifying at Step 4, the hypothetical question has to be accurate at that level as well. And an inaccurate hypothetical question at Step 4 also triggers the requirements with the hypothetical question being accurately done. The second point I would honestly say is that I hear the argument about the check boxes repeatedly being made. And maybe there is some argument that can be made. The way that the check boxes on the mental RFC form are to be done is that it is a worksheet. But then the state agency physician is supposed to translate those into an RFC. And what ends up happening too often is the doctor then just writes unskilled work. Well, it doesn't encompass, it doesn't cover any of the specifics that he's outlined on his own form. So the judge could fix that by looking at those and applying them correctly. In this particular case, when you're saying that she had limitations in concentration, and now we're talking about, well, that takes care of a simple routine and repetitive, where does that affect her ability to perform at a work pace? For instance, you could have simple type work, for instance, letters, postage, mailings, and such as an office helper, which is what she could do. But if you're not performing the job sufficiently, doing enough, and consistently during the course of a day, and fall below a standard of production, i.e. work pace, you're going to lose the job. So it's incongruent to go from concentration to simple routine and repetitive and then claim that that somehow covers work pace. So if there's no more questions, thank you. Thank you very much. Thanks to both counsel. The case will be taken under advisement.